# EXHIBIT "C"

CASE#: **17-C-423** Sub Code: Date Opened: 11/06/2017

Date Printed: 12/15/2017

JUDGE: RUSSELL M. CLAWGES, JR.

Plaintiff: **BOUNTY MINERAL LLC**

vs

Defendant: **EQT PRODUCTION COMPANY**

Pro Attorney: PAUL B. WESTBROOK

Def Attorney:

| Page | Date | Memorandum | Account# | Earned | Collected | Balance |
|---|---|---|---|---|---|---|
| 1 | 11/06/2017 | Complaint Filed | | 200.00 | 200.00 | .00 |
| 2 | 11/06/2017 | Additional clerk fee | | 5.00 | 5.00 | .00 |
| 3 | 11/06/2017 | Process issued - S/S | NotCollected | 20.00 | .00 | 20.00 |
| | | | **Totals** | **225.00** | **205.00** | **20.00** |

A TRUE COPY

ATTEST [signature] CLERK

MONONGALIA COUNTY CIRCUIT COURT




**Service of Process Transmittal**
11/20/2017
CT Log Number 532333638

**TO:** Jessica Brisendine, 395-5588
EQT Corporation
625 Liberty Ave Ste 1700
Pittsburgh, PA 15222-3114

**RE:** **Process Served in West Virginia**

**FOR:** EQT Production Company (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | BOUNTY MINERALS, LLC, PLTF. vs. EQT PRODUCTION COMPANY, DFT. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Exhibits |
| **COURT/AGENCY:** | Monongalia County Circuit Court, WV<br>Case # 17C423 |
| **NATURE OF ACTION:** | Property Damage Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Charleston, WV |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 11/20/2017 postmarked on 11/17/2017 |
| **JURISDICTION SERVED :** | West Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this Summons upon you, exclusive of the date of service |
| **ATTORNEY(S) / SENDER(S):** | Paul B. Westbrook<br>HARRIS, FINLEY & BOGLE, P.C.<br>777 Main Street, Suite 1800<br>Fort Worth, TX 76102<br>817-870-8700 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air , 1Z0399EX0103618918<br>Image SOP<br>Email Notification, Melissa Preston mpreston@eqt.com<br>Email Notification, Jessica Brisendine jbrisendine@eqt.com<br>Email Notification, Carrie Wolf cwolf@eqt.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 5400 D Big Tyler Road<br>Charleston, WV 25313 |
| **TELEPHONE:** | 919-821-7139 |



Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

CERTIFIED MAIL

US POSTAGE PITNEY BOWES

ZIP 25311 $ 008.62⁰
02 4W
0000336734 NOV 17 2017

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

USPS CERTIFIED MAIL™



9214 8901 1251 3410 0002 1907 88




**Mac Warner**
Secretary of State
State of West Virginia
Phone: 304-558-6000
886-767-8683
Visit us online:
www.wvsos.com

EQT PRODUCTION COMPANY
C. T. Corporation System
5400 D Big Tyler Road
CHARLESTON, WV 25313

Control Number: 206089

Defendant: EQT PRODUCTION COMPANY
5400 D Big Tyler Road
CHARLESTON, WV 25313 US

Agent: C. T. Corporation System

County: Monongalia

Civil Action: 17-C-423

Certified Number: 92148901125134100002190788

Service Date: 11/16/2017

I am enclosing:

1 summons and complaint

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the Secretary of State's office.*

Sincerely,

Mac Warner

Mac Warner
Secretary of State



# SUMMONS

**IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA**

**BOUNTY MINERALS, LLC**

**PLAINTIFF(S),**

**VS.**

**CIVIL ACTION NO. 17-C-423**

**EQT PRODUCTION COMPANY**
**c/o CT Corporation System**
**5400 D Big Tyler Road**
**Charleston WV 25313**

**DEFENDANT(S).**

ACCEPTED FOR SERVICE OF PROCESS
2017 NOV 16 A 10:56
SECRETARY OF STATE
STATE OF WEST VIRGINIA

**TO THE ABOVE NAMED DEFENDANT(S):**

**IN THE NAME OF THE STATE OF WEST VIRGINIA,**

You are hereby summoned and required to serve upon **PAUL B. WESTBROOK** counsel for plaintiff(s), whose address is **777 Main Street, Suite 1800, Fort Worth TX 76102** an answer, including any related counter-claim you may have to the complaint filed against you in the above style civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within **30 days** after service of this summons upon you, exclusive of the date of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above style civil action.

DATED: **November 6, 2017**

Jean Friend
**Jean Friend, Circuit Clerk**

By: Susan Trowbridge
DEPUTY CLERK

IN THE CIRCUIT COURT
MONONGALIA COUNTY, WEST VIRGINIA

BOUNTY MINERALS, LLC )
 )
VS. ) CASE NO.: 17-C-423
 )
EQT PRODUCTION COMPANY )

## COMPLAINT

Bounty Minerals, LLC ("Bounty") files this Complaint against EQT Production Company ("EQT") and, in support, respectfully shows the following:

## PARTIES

1. Plaintiff, Bounty, is a limited liability company formed under the laws of Texas and maintains its principal office in Fort Worth, Tarrant County, Texas.

2. Defendant, EQT Production Company, is a Pennsylvania corporation and maintains its principal office in Pittsburgh, Pennsylvania. EQT may be served with process by serving its West Virginia agent for service of process, CT Corporation System, at 5400 D Big Tyler Road, Charleston, West Virginia 25313.

## VENUE

3. Venue is proper in Monongalia County under W. Va. Code § 56-1-1 because the real property at issue in this action is situated in Monongalia County.

## FACTS

4. Bounty owns an undivided 25% interest in the minerals in and under approximately 64.4620 acres in Battelle District, Monongalia County, West Virginia, known as surface Tax Parcels 01-14-4 and 01-14-5, and Mineral Parcel No. 9999-0100-0420-0000 (the "Land"). A true and correct copy of the Deed by which Bounty (or its predecessor entity) acquired its interest in the Land is attached hereto as Exhibit A.

5. An oil and gas lease titled "Agreement" covering the Land was given by Elias Fox, et al. to A. L. Foster on May 23, 1929 (the "1929 Lease"). A true and correct copy of the 1929 Lease is attached hereto as Exhibit B. The lessors owned the minerals in the Land at the time of the 1929 Lease and are predecessors in interest to Bounty.

6. The 1929 Lease had a five year primary term and provided the lessor a 1/8 royalty for oil produced from the Land and advanced quarterly payments of One Hundred ($100.00) Dollars for each gas well drilled on the Land.

7. By Agreement dated January 14, 2010, recorded in Book 1405, Page 621 in Monongalia County, West Virginia, William J. Fox, successors in interest to Elias Fox, et al. agreed with EQT (successor to A. L. Foster) to amend the 1929 Lease to, among other things, add a shut-in payment provision. (the "2010 Amendment"). A true and correct copy of the 2010 Amendment is attached hereto as Exhibit C.

8. A well was drilled under the 1929 Lease (API No. 47-061-00397) (the "Well"). According to the records of the West Virginia Department of Environmental Protection, the Well produced gas until May 2009 and has never produced since. In fact, the Well has been classified as "abandoned." Thus, the 1929 Lease terminated for lack of production as early as May 2009.

9. EQT has shown no intention or action of further developing the 1929 Lease. The cessation of production and lack of intention or action to further develop have terminated the 1929 Lease. Bounty requested a release of the 1929 Lease; EQT refused to provide one, and instead has asserted that the 1929 Lease remains in full force and effect.

10. EQT has continued to send payments to Bounty purporting to represent shut-in payments under the 2010 Amendment. Despite Bounty notifying EQT that the 1929 Lease has terminated, EQT continues to include such payments to Bounty in consolidated checks that

include those erroneous payments together with payments EQT properly owes Bounty on other leases and lands. Bounty has attempted to remit the erroneous portion of the funds to EQT, which it has refused to accept. Accordingly, Bounty files this suit to declare the parties' rights with respect to the 1929 Lease and the Land.

11. Until a release is executed by Defendant EQT and filed, Bounty is unable to lease or develop its interest in the Land. As a result, Bounty has suffered damages, including loss of prospective leases, bonus and royalty payments. Bounty remains ready and willing to return to EQT all payments EQT erroneously sent to Bounty based on the terminated 1929 Lease as may be directed by the Court.

**CAUSES OF ACTION**

**Count One – Declaratory Judgment**

12. Based on the foregoing facts, which are fully incorporated herein, Bounty requests that the Court issue a declaration under the West Virginia Declaratory Judgments Act, W. Va. Code § 55-13-1, et seq., that the 1929 Lease has terminated and is no longer enforceable. The 2010 Amendment contained no words of grant, and could not revive or renew the already terminated 1929 Lease. In the alternative, EQT has not maintained the 1929 Lease under the 2010 Amendment because there is no well shut-in by EQT. Rather, there is only an abandoned well that last produced in 2009.

**Count Two – Ejectment**

13. Based on the foregoing facts, which are fully incorporated herein, Bounty requests that the Court issue an order of ejectment against EQT, ordering it to immediately cease possession of the Land and surrender the same to Bounty. The above facts demonstrate Bounty's right to own and possess the minerals in the Land, as well as EQT's wrongful possession by claiming the Land and paying flat rate royalties thereon.

**Count Three – Slander of Title**

14. Based on the foregoing facts, which are fully incorporated herein, EQT's conduct constitutes slander of Bounty's mineral title in the Land. By continuing to publish and claim an interest under the 1929 Lease, which has clearly terminated as a matter of law, EQT cannot be acting in good faith and, therefore, is acting with malice against Bounty's title. Therefore, Bounty seeks damages as allowed by law against EQT for all injuries and losses suffered by Bounty as a result of EQT's slander of title against Bounty, including Bounty's ongoing loss of the ability to lease or develop the Land due to EQT's slander of title.

**PRAYER**

Therefore, Bounty respectfully prays for judgment against EQT and in Bounty's favor by issuance by the Court of a declaration that the 1929 Lease has terminated and is no longer enforceable. Bounty further prays for damages, actual, special, and otherwise, it has sustained as a result of EQT's slander of title, and for such other and further relief, at law or in equity, to which Bounty may be justly entitled.

Respectfully submitted,

Paul B. Westbrook
Pwestbrook@hfblaw.com
West Virginia Bar No. 11578
**HARRIS, FINLEY & BOGLE, P.C.**
777 Main Street, Suite 1800
Fort Worth, TX 76102
Phone: (817) 870-8700
Fax: (817) 332-6121
**ATTORNEYS FOR BOUNTY MINERALS, LLC**

585275.1

# EXHIBIT A

CAFFEY GROUP
8851 CAMP BOWIE BLVD WEST STE 100
FORT WORTH, TX 76116-

Carye L. Blaney
MONONGALIA County 03:17:05 PM
Instrument No 654440
Date Recorded 09/16/2016
Document Type DE
Pages Recorded 7
Recording Fee $13.00
Transfer Tax $743.60
Additional $25.00

1563-12

# OIL, GAS AND MINERAL GENERAL WARRANTY DEED

THIS OIL, GAS AND MINERAL GENERAL WARRANTY DEED, dated as of the 28 day of July, 2016, (the "Effective Date") is by and between William James Fox a/k/a William J. Fox, widower, party of the first part, having an address of 1372 Crossroads Road, Fairview, West Virginia, 26570, hereinafter referred to, whether one or more grantors, as the "GRANTOR," and Bounty Minerals III Acquisitions, LLC, having an address of 777 Main Street, Suite 3400, Fort Worth, Texas 76102, party of the second part, hereinafter referred as the "GRANTEE".

WITNESSETH, that for and in consideration of the sum of Ten and 00/100 Dollars ($10.00) cash in hand paid by Grantee to Grantor and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor does GRANT and CONVEY, with covenants of general warranty and subject to the hereinafter described restrictions, reservations, exceptions, covenants and conditions, unto Grantee and their successors and assigns forever, the undivided interests as shown in the attached Exhibit "A" in and to the oil, gas, coalbed methane, liquid hydrocarbons, gaseous hydrocarbons, and other minerals of all natures or descriptions (*but excluding therefrom gravel, bluestone and coal*), including, but not limited to, all of the shales, formations, and horizons of all natures or descriptions whatsoever in which such oil, gas, coalbed methane, casinghead gas, liquid hydrocarbons, and gaseous hydrocarbons may exist, emanate from or be produced by any technology, whether now known or hereafter developed (collectively the "Oil and Gas"), within and underlying those certain tracts or parcels of land situated in Battelle District, Monongalia County, West Virginia, containing 540.4996 acres, more or less, and being more particularly described and identified on Exhibit "A" attached hereto and made a part hereof, designated on the land books for said district and county as Tax Map/ Parcel No(s). p/o 1-7-22.4, 1-14-4, 1-14-5, 1-14-9, p/o 1-14-13, 1-14-14, 1-14-15, 1-14-30, 1-14-30.2, 1-15-06, 1-23-16, 1-23-16.1, 1-23-16.2, 1-23-16.3 and 1-23-16.4; being Mineral Parcels 9999-0100-0420-0000, 9999-0100-0422-0000, 9999-0100-0423-0000, 9999-0100-0424-0000, 9999-0100-0425-0000 and 9999-0100-0427-0000, and being the same tracts or parcels of land which were devised from the Estate of Willie Fox, deceased, to Elva Fox and William James Fox, and of record in the Office of the County Commission of Monongalia County, West Virginia, in Estate Book 25 Page 663; also being the same tracts or parcels of land which were devised from the Estate of Elva E. Fox, deceased, to William James Fox, and of record in the Office of the County Commission of Monongalia County, West Virginia, in Bond Book 61 Page 318 (the "Premises") together with the right to make use of the surface and subsurface (and any and all empty, pore or open spaces) of the Premises and the rights of ingress, egress, and regress at all times for the purpose of mining, drilling (either vertically, horizontally, or directionally), producing, exploring and developing, storing, handling, transporting, and marketing Oil and Gas, including the right to construct and use pipelines and the right to conduct geophysical and other exploratory tests (including, but not limited to, core drilling and seismic testing) on the Premises, with all such rights to include both existing technology and any and all technology discovered or developed in the future and also the right to remove any and all property of whatever kind or character, placed on said Premises, and any and all other rights necessary or incident to such operations.

It is the parties' intent that the Grantor hereby conveys to Grantee 68.6074 net mineral acres and 64.2605 net royalty acres in and to the Premises. If there is a conflict between the interest stated herein and the interest stated in the granting clause, the interest stated in the granting clause shall control.

If Grantor now owns or later acquires an undivided interest in the Oil and Gas within and underlying the Premises or any tracts of land that are contiguous, adjacent to, or adjoining the Premises which is not conveyed by this Deed ("Additional Interest") and desires to sell the Additional Interest to a buyer who is ready, willing, and able to acquire the Additional Interest, Grantor shall give written notice of the terms of the proposed sale, including a copy of the contract or proposal, and Grantee shall have the preferential right to purchase the Additional Interest for the same price per net acre and under the same terms and conditions as those which apply to the proposed sale. Within thirty days of receipt of Grantor's notice of intent to sell the Additional Interest, Grantee shall provide Grantor with notice of their election to exercise their preferential right to purchase the Additional Interest under the same terms and conditions of the proposed sale. If the Grantee elect to exercise their right to purchase the Additional Interest, Grantor agrees to execute, within thirty days of receipt of Grantees' notice of their election to purchase and using the same form as this Deed, a deed conveying the Additional Interest to Grantee. This preferential right to purchase the Additional Interest shall also apply to all interest in the Oil and Gas within and underlying the Premises or any tracts of land that are contiguous, adjacent to, or adjoining the Premises claimed by Grantor by limitation, equity, prescription, possession, adverse possession, reversion, and/or reverter under an unrecorded instrument and/or for which Grantor has a preferential right to acquire or purchase

This conveyance is made subject to any rights now existing in favor of any lessee or its assigns under any valid and subsisting oil and/or gas lease covering the Premises, but this Deed shall not serve to or be deemed to be a ratification or revivor of any previously granted oil and/or gas lease which is no longer valid or in force and effect. Grantee shall have, receive, and enjoy the stated undivided interests in all bonus, rents, royalties, shut-ins, monies, proceeds, income, advanced delay rentals, and other benefits which may accrue to the undivided oil and/or gas interest conveyed by this Deed, from and after the Effective Date, as if the Grantee had been, at the date of making any currently valid and subsisting lease, the owner of the conveyed undivided oil and/or gas interest in the Premises.

Grantor agrees to and shall execute any further written instruments deemed necessary or convenient by Grantee, Grantee's heirs, successors, or assigns, to carry out the purposes and intent of this Deed, including, but not limited to, division orders, transfer orders, and correction oil and gas deeds, including deeds correcting the description of the Premises and/or more accurately describing the Premises. Grantor further agrees that the Grantee may revise the property description or Exhibit "A" (if any) attached hereto in order to more accurately describe the interests conveyed hereby, and this Deed, as revised, shall be binding upon Grantor for all purposes.

Grantor acknowledges that it is Grantor's sole responsibility to pay all annual real estate taxes assessed for the current year and any previous year in full. As to any annual real estate taxes assessed against the Premises which are unpaid at the time of closing, Grantor covenants to the Grantee that Grantor shall pay the same in full as due, but in any event before advertisement of the Premises for sale for unpaid taxes or delinquent taxes. In addition, Grantor agrees that Grantee may pay any such taxes which are due and owing and/or which are assessed as of the time of closing and the agreed purchase price herein shall be reduced by the amount so paid. Grantee shall have and possess the right to redeem and pay for and on behalf of Grantor any and all such real estate taxes at any time and, upon such payment, become subrogated to the rights of the assessing authority.

To have and to hold the above described oil and gas interest in the Premises with all and singular the rights, privileges, and appurtenances thereunto or in any way belonging to said Grantor herein. Grantor does, for itself and its successors and assigns, warrant and agrees to forever defend title to the interest conveyed hereby, unto Grantee, its successors and assigns, against the claims and demands of all and every person whomsoever and warrants and covenants that the interest conveyed herein is free and clear of all encumbrances and liens whatsoever. The terms, covenants and conditions contained in this Deed shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, and such terms, covenants and conditions shall be covenants running with the Premises and with each subsequent transfer or assignment of the Oil and Gas, or any part thereof. Grantee shall have the benefit of the doctrine of after acquired title.

The undersigned Grantor hereby declares that the total consideration paid for the property herein conveyed is ONE HUNDRED SIXTY-EIGHT THOUSAND EIGHT HUNDRED THIRTEEN AND 59/100 DOLLARS ($168,813.59).

Declaration of Residency: The party of the first part hereby declares it is a resident of the State of West Virginia as defined by W. Va. Code § 11-21-7b and intends this declaration to satisfy the requirements thereof.

*(SIGNATURE PAGE TO FOLLOW)*

WITNESS the following signatures and seals.

GRANTOR(S):

William J. Fox
William James Fox (SEAL)
William James Fox a/k/a William J. Fox

ACKNOWLEDGMENT

STATE OF WEST VIRGINIA

COUNTY OF Marion

This instrument was acknowledged before me on the 28 day of July, 2016 by William James Fox a/k/a William J. Fox, widower.

Bonna L Canfield
Notary Public

OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
Bonna L. Canfield
First Exchange Bank
PO Box 310
Fairview, WV 26570
My commission expires September 16, 2018

Printed Name: Bonna L Canfield

My Commission Expires: 9-16-18

Prepared By:
The Caffey Group, LLC
8851 Camp Bowie West, Suite 100
Fort Worth, TX 76116

**EXHIBIT "A"**

**William James Fox a/k/a William J. Fox, widower, Grantor**

**TRACT 1 –** Situate lying and being on the waters of Dunkard Creek, in Battelle District, Monongalia County and State of West Virginia, bounded and described as follows, to wit:

Beginning at a stake West of the run in a line of F. M. Efaw and with said line South 71 ½° West 44.8 poles to pointers; thence South 84° West 16 poles to a chestnut oak; thence North 82° West 29 poles to a chestnut oak; thence North 71° West 41 poles to a white oak; thence North 85° West 26 ½ poles to a chestnut oak, a corner to lands of A. P. Johnston Heirs and with the same South 30 ½ poles to a hickory; thence South 42° West 56 poles to a white oak, a corner to lands of A. P. Haught, and with said lands East 50 poles to a white oak; thence South 6° West 95 poles to a stone; thence South 86° East 116 poles to a point in the road; thence North 15 poles to a stake; thence North 87° East 60 poles to pointers; thence North 71° East 3.34 poles to a stake; thence with lines of Iva N. Richardson North 32° 06' West 23.73 poles to a stake; thence North 4° 09' West 27 poles to a stake; thence North 6° 42' East 8.3 poles to a stake; thence North 2° East 8.56 poles to a stake; thence North 42° 56' West 36.6 poles to a stake; thence South 57° 11' West 6.73 poles to a point in the road, thence North 8° 22' West 27.35 poles to a stake; thence North 35° 50' East 16 poles to a stake; thence North 6 ½° East 15 ½ poles to a post; thence North 4° West 14 ¾ poles to the place of beginning, containing one hundred and fifty (150) acres, more or less.

**IT IS THE INTENTION OF THIS DEED TO CONVEY AN UNDIVIDED 14.2857% IN THE ABOVE TRACTS, BEING 21.4286 NET ACRES, IN PARCEL ID(S). 1-23-16, 1-23-16.1, 1-23-16.2, 1-23-16.3 AND 1-23-16.4; BEING MINERAL PARCEL ID 9999-0100-0425-0000.**

**TRACT 2 –** Situate, lying and being in Battelle District, in the County of Monongalia and State of West Virginia, all bounded and described as follows, to-wit.

Beginning at a post; thence by lands of William and Elias Fox, N. 55-1/4 W. 74 perches to a stake in Jane and Cy Cross' land; thence by said Cross' line S. 53-1/2 W. 23.9 perches to a stone; thence by same lands S. 20-1/2 W. 14.5 perches to a stone; thence by lands of S. Barr S. 15-1/2 E. 16.8 perches to a post; thence by lands of J. C. Thomas, S. 47-1/4 E. 29.2 perches to a post; thence by same lands N. 60-3/4 E. 27 perches to a post; thence by same lands N. 78-1/8 E. 26 perches to a post; thence by same land N. 64 E. 10.6 perches by road; and thence crossing said road S. 44 E. 1.2 perches to the place of beginning, containing 17 acres and 105 perches (17.6563 acres) more or less.

**IT IS THE INTENTION OF THIS DEED TO CONVEY AN UNDIVIDED 9.0910% IN THE ABOVE TRACT, BEING 1.6052 NET ACRES, IN PARCEL ID(S) P/O 1-7-22.4, BEING MINERAL PARCEL ID(S) 9999-0100-0424-0000.**

TRACT 3 – Situate, lying and being in Battelle District, in the County of Monongalia and State of West Virginia, all bounded and described as follows, to-wit.

Beginning at a white oak tree, a corner to Adam Moore; thence by lands of the said Moore and Isaac Lemley S 72-1/2° W. 97.2 perches to a stake, corner to Jos. Park; thence by said Park's land S. 1° E. 26.8 perches to a locust tree; thence by same lands S. 9° E. 48.2 perches to a stake; thence by same lands S. 6 W. 26 perches to a hickory (gone); thence by lands of same S. 4° E. 33.2 perches to a stake, corner to lands of William Tuttle; thence by said Tuttle's and James Fox's land S. 46° E. 70.4 perches to a stake near a large chestnut tree (dead); thence by lands of the said Fox N. 48° E. 33.6 perches to a maple tree; thence by same lands N. 34-1/4° E. 25 perches to an ash tree; thence by same lands N. 55-1/4° E. 36.8 perches to the road; thence by same lands S. 36° E. 17.6 perches to a beech tree at lower side of road; thence by same lands S. 59° E. 11.8 perches to a gate post; thence by same lands N. 19-1/4° E. 13.6 perches to a W.O.; thence by same lands and lands of Philip Shuman N. 46-1/2° E. 79 perches to a large white oak tree; thence by lands of the said Shuman N. 44-1/4° W. 40 perches to a stone; thence by same lands and land of Adam Moore N. 37-1/2° W. 74 perches to a hickory tree; thence by lands of the said Moore N. 74-3/4° W. 44 perches to the place of beginning, containing 171 acres, more or less.

IT IS THE INTENTION OF THIS DEED TO CONVEY AN UNDIVIDED 9.0910% IN THE ABOVE TRACT, BEING 15.5455 NET ACRES, IN PARCEL ID(S) 1-14-30, 1-14-30.2 AND 1-15-06; BEING MINERAL PARCEL ID(S) 9999-0100-0423-0000.

TRACT 4 – Situate in Battelle District in the County of Monongalia and State of West Virginia; bounded and described as follows:

The farm known as the Fred Gump farm beginning at a white oak stump near the stable of Alexander Fox, thence by lands of Joseph Devine S. 46-1/2 E. 60.6 perches to a stone in A. Shriver's line; thence by said Shriver's land N. 63-1/2 E. 9.8 perches to a sugar tree stump (now gone); thence to lands of Joseph Park N. 2 E. 53 perches to a stake in a drain near the County road; thence with lands of W. L. Fox N. 73 W. 20.5 perches to a stake; thence by same lands N. 87-1/2 W. 14 perches to a stake; thence by same lands N. 18-1/2 W. 117 perches to a lynn, thence by lands of Milo Strosnider N. 53-1/4 W. 12.8 perches to a stone (formerly a hickory); thence by same lands N. 25 W. 30.8 perches to a white oak; thence by same lands N. 42-3/4 W. 7.5 perches to pointers a corner to lands of J. C. Thomas; thence by lands of the said Thomas S. 43-1/4 W. 125.7 perches to pointers in John Dulaney's line; thence by lands of the said Dulaney and Joseph E. Devine S. 55-1/2 E. 141 perches to the place of beginning, containing 95 acres and 101 perches be the same (95.6313 acres), more or less.

IT IS THE INTENTION OF THIS DEED TO CONVEY AN UNDIVIDED 9.0909% MINERAL INTEREST IN THE ABOVE TRACT, BEING 8.6938 NET MINERAL ACRES, AND AN UNDIVIDED 4.5455% ROYALTY INTEREST, BEING 4.3469 NET ROYALTY ACRES, IN PARCEL ID(S) P/O 1-14-13, 1-14-14 AND 1-14-15; BEING MINERAL PARCEL ID 9999-0100-0422-0000.

<u>TRACT 5 –</u> Situate in Battelle District in the County of Monongalia and State of West Virginia; bounded and described as follows:

Beginning at a fence post corner to lands of W.L. Fox, thence by same S. 61-1/4 E. 21-3/10 poles to a stone, S. 22 E. 35-4/10 poles to a poplar S. 45-3/4 E. 8 poles to a sugar, S. 53-1/4 E. 38 poles to a chestnut oak S. 49-1/2 E. 26-2/10 poles to Ironwood in Lemasters line, thence with same N. 42 E. 60-8/10 poles to pointers, corner of W.J. Lemasters and Abraham Shriver, thence with said Shrivers line N. 45 W. 55-5/10 poles to stone, N. 36 W. 17 poles to white oak stump, thence by lands of W.L. Fox S. 84-1/2 W. 13-7/10 poles to a hickory; N. 79 W. 9-7/10 poles to hickory; N. 56-3/4 W. 4-5/10 poles to a stone, S. 73-1/2 W. 49-7/10 poles to a post, S. 6-3/4° W. 4 poles to place of beginning, containing 41 acres and 3 rods (41.7500 acres), more or less.

IT IS THE INTENTION OF THIS DEED TO CONVEY AN UNDIVIDED 12.5000% IN THE ABOVE TRACT, BEING 5.2188 NET ACRES, IN PARCEL ID 1-14-9; BEING MINERAL PARCEL ID 9999-0100-0427-0000.

<u>TRACT 6 –</u> Situate in Battelle District in the County of Monongalia and State of West Virginia; bounded and described as follows:

Beginning at a post, corner to Jesse Cross, thence N. 45° E. 24 poles to a stake, N. 54° 30' E. 36.9 poles to a stake; S. 8° 15' E. 58.29 poles to a post, formerly beech; N. 72° E. 24.5 poles to a stake; S. 22° W. 109.54 poles to a stake above a marked Chestnut; N. 45° 53' W. 51.81 poles to road, S. 32° W. 9.95 poles; S. 62° W. 13.97 poles; S. 76° 30' W. 10 poles; N. 11° 25' W. 56.35 poles to post; N. 45° 53' W. 16.97 poles to post; N. 47° 54.47 poles to post; S. 52° 30' E. 11.04 poles to place of beginning, containing 64.462 acres.

IT IS THE INTENTION OF THIS DEED TO CONVEY AN UNDIVIDED 25.0000% IN THE ABOVE TRACT, BEING 16.1155 NET ACRES, IN PARCEL ID(S) 1-14-4 AND 1-14-5; BEING MINERAL PARCEL ID(S) 9999-0100-0420-0000.

LEAVING IN THE AGGREGATE OF 540.4996 GROSS ACRES, 68.6074 NET MINERAL ACRES AND 64.2605 NET ROYALTY ACRES, MORE OR LESS, IN TRACTS 1 - 6.

END OF EXHIBIT "A"

THE CAFFEY GROUP LLC [illegible]

Monongalia County Clerk 9/12/2016

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|---|---|---|---|---|---|---|
| 9/8/2016 | Bill | Fox (585.8933) #1261 | 38.00 | 38.00 | | 38.00 |
| 9/8/2016 | Bill | Fox (585.8933) #1261 | 743.60 | 743.60 | | 743.60 |
| | | | | | Check Amount | 781.60 |

Operating Account 781.60

THE CAFFEY GROUP LLC 18234

Monongalia County Clerk 9/12/2016

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|---|---|---|---|---|---|---|
| 9/8/2016 | Bill | Fox (585.8933) #1261 | 38.00 | 38.00 | | 38.00 |
| 9/8/2016 | Bill | Fox (585.8933) #1261 | 743.60 | 743.60 | | 743.60 |
| | | | | | Check Amount | 781.60 |

Operating Account 781.60

Print Date Friday, Sep 16 2016
Print Time 03:21:39 PM

MONONGALIA County
Instrument No 654440
Recorded Date 09/16/2016
Transaction Time 03:17:05 PM
Name1 WILLIAM J FOX
Name2 BOUNTY MINERALS III A
[illegible] LLC
Document Type DE
Pages Recorded ?
Book-Page 1563-12
Recording Fee $13.00
Transfer Tax $743.60
SB592 $1.00
SB335 $20.00
SB8220 $4.00
Total Due $781.60
Check Received $781.60
Total Received $781.60

# EXHIBIT B

255 ASSIGNED BOOK 43 PAGE 317

ELIAS FOX, ET AL.

TO

A.L. FOSTER

255

OIL & GAS LEASE

AGREEMENT, Made and entered into the 23rd day of May A. D. 1929 by and between W. L. Fox and Margaret Fox his wife, Elias Fox and Ida Fox his wife, William Fox and Ada Fox his wife, Alexander Fox and [illegible] Fox his wife and Willie Fox, Single of County of Monongalia and State of W. Va. parties of the first part, and A. L. Foster of Morgantown W. Va. party of the second part:

WITNESSETH, that the said parties of the first part, for and in consideration of the sum of One $1.00 Dollars to them in hand well and truly paid by the said party of the second part, the receipt of which is hereby acknowledged, and the covenants and agreements hereinafter contained on the part of the said party of the second part, to be paid, kept and performed, have granted, demised, leased and let, and by these presents, do grant, demise, lease and let unto the said party of the second part, its successors or assigns, for the sole purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, stations and structures thereon to take care of all the said products, all that certain tract of land, situated in Battelle District, Monongalia County and State of West Virginia on waters of Miracle Run bounded substantially as follows:

On the North by lands of Owen [illegible]

On the East by lands of Elias Fox

On the South by lands of Jesse Cross

On the West by lands of Elias Fox and Dauford Cross

Containing Thirty Two acres, more or less and being same land conveyed to the first part___ by ______ by deed, bearing date ______ reserving however, therefrom 300 feet around the buildings on which no well shall be drilled by either party, except by mutual consent.

It is agreed that this lease shall remain in force for the term of Five years from this date, and as long thereafter as oil or gas, or either of them, is produced therefrom by the party of the second part, its successors or assigns.

In consideration of the premises, the said party of the second part covenants and agrees: 1st—To deliver to the credit of the first parties, their heirs or assigns, free of cost, in the pipe line to which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises; and 2nd—to pay One hundred $100.00 Dollars each three months for gas from each and every gas well drilled on said premises, the product of which is marketed and used off the premises, said payment to be made on each well within sixty days after commencing to use the gas therefrom, as aforesaid, and to be paid each three months thereafter while the gas from said well is so used.

Said second party shall not be required in any event to increase the rate of said gas well payments or said royalty of oil by reason of any royalty or interest, in said oil or gas that may have been heretofore sold, reserved or conveyed by the first parties or their predecessors in the title or otherwise. Second party covenants and agrees to locate wells so as to interfere as little as possible with the cultivated portions of the farm. And further to complete a well on said premises within Sixty Days from the date hereof, or pay at the rate of Thirty six $36.00 Dollars, quarterly in advance, for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rental under this provision during the remainder of the term of this lease. All payments may be made direct to W. L. Fox or deposited to his credit in First National Bank [illegible] at Wadestown Monongalia County W. Va. or by check mailed to him or in the same manner to W. L. Fox [illegible] hereby appointed AGENT for such purpose. W. L. Fox is to have all the [illegible] [illegible] to be paid to [illegible]

Said first parties may lay a line to any gas well on said premises to take gas free for their [illegible] heat and light to be used in economical appliances in one dwelling house on said premises at their own risk, subject to the use, operation and right of abandonment of the well by the said second party, and said [illegible] agree to take gas from said well at such pressure as from time to time may be maintained in said well [illegible] second party, and said second party shall in no event be liable to said first parties for any damages [illegible] whether by reason of insufficient supply of gas, changes in pressure, bursting of pipes, accidents, or damages caused by use of pumping station, and said first parties shall subscribe to and be bound by the reasonable rules and regulations of the said second party their successors or assigns, as published by it from time to time, relating to the use of gas. ~~Lessor to pay for all gas used over [illegible] cu. ft. each year at the prevailing rate at [illegible] at time gas is used.~~ W. L. Fox is to have the free gas named in lease.

Said party of the second part shall have the right to abandon any well or wells drilled on said land at any time. It is further agreed that a well must be commenced within ninety days [illegible]

Approved [illegible] It is agreed that the second party is to have the privilege of using sufficient water from the premises to run all necessary machinery at any time to remove all machinery and fixtures placed on said premises; and further, upon the payment of One Dollar, at any time, by the party of the second part, its successors or assigns, to the parties of the first part their heirs, successors or assigns, said party of the second part, its successors or assigns, shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms, shall cease and determine and this lease become absolutely null and void.

[illegible] (handwritten marginal notation, rotated) [illegible] 1929

DB 230/255

256

IN WITNESS WHEREOF the parties to this agreement have hereunto set their hands and seals the day and years first above written.

WITNESS:

Elias Fox (Seal)
Ida Fox (Seal)
William Fox (SEAL)
Ada Fox (SEAL)
Alexander Fox (SEAL)
Emma Fox (SEAL)
Willie Fox
W L Fox (Seal)
Margaret Fox (Seal)

State of West Virginia,
County of Monongalia, to-wit:

I, Leroy Lemley, a Notary Public in and for said County of Monongalia, do certify that Elias Fox and Ida Fox, his wife, William Fox and Ada Fox, his wife, Alexander Fox and Emma Fox, his wife, and Willie Fox, single, whose names are signed to the writing above, bearing date the 23rd day of May, 1929, have this day acknowledged the same before me in my said county.

Given under my hand this 27 day of May, 1929.

My commission expires the 10 day of December 1935

Leroy Lemley
Notary Public in and for Monongalia County, West Virginia.

(NOTARY PUBLIC seal)

STATE OF WEST VIRGINIA,

County of Monongalia, to-wit:

I, Edward G. Donley, Notary Public of the said county of Monongalia do certify that W. L. Fox and Margaret Fox, his wife and ..., whose names are signed to the writing above, bearing date the 23rd day of May, 1929, have this day acknowledged the same before me in my said county.

Given under my hand this 27th day of May, 1929.

Edward G. Donley
Notary Public
My commission expires Dec. 30, 1929

STATE OF WEST VIRGINIA,
MONONGALIA COUNTY, TO-WIT:

I, JOHN M. GREGG, Clerk of the County Court of the county aforesaid, do certify that the foregoing writing, together with the certificates thereto attached, was this day presented to me in my said office, and was admitted to record therein, at 1:15 o'clock P.M.

Given under my hand this 10 day of July 1929.

Jno M. Gregg Clerk.

# EXHIBIT C

1405-621 BOOK 1405 PAGE 621

EQT PRODUCTION
P O BOX 23526
PITTSBURGH, PA 15222-6526

Carye L. Blaney
MONONGALIA County 10:23:50 AM
Instrument No 355385
Date Recorded 02/12/2010
Document Type LER
Pages Recorded 3
Recording Fee $5.00
Additional $6.00

Lease No. 300749

## AMENDMENT AND RATIFICATION OF OIL AND GAS LEASE

This Amendment and Ratification of Oil and Gas Lease (this "Amendment") is made and entered into this 14th day of January, 2010, by and between William J. Fox, widower, with an address of 1372 Crossroads Road, Fairview, WV 26570 ("Lessor"), and EQT Production Company, a Pennsylvania Corporation with an office at 1710 Pennsylvania Avenue, Charleston, West Virginia, 25302 ("Lessee").

WHEREAS, Lessor and Lessee are parties to that certain mineral lease (the "Lease") dated May 23, 1929, between W.L. Fox and Margaret Fox, his wife; Elias Fox and Ida Fox, his wife; William Fox and Ada Fox, his wife; Alexander Fox and Emma Fox, his wife; Willie Fox, single; as lessors, and A.L. Foster and Lovella M. Foster, as lessee, recorded in the Office of the Clerk of the County Commission of Monongalia County, State of West Virginia, in Book 230, at Page 255, as amended or modified from time to time, whether or not such amendments or modifications are of record, and covering 72 acres, more or less (the "Leased Premises); and

WHEREAS, Lessor and Lessee now desire to ratify the Lease as being in full force and effect and to amend and modify certain provisions of the same.

NOW THEREFORE, for and in consideration of the foregoing recitals, other good and valuable consideration, and the mutual advantage to the parties hereto, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Recitals Incorporated By Reference. Lessor and Lessee adopt the recitals set forth above as part of the Lease and such recitals are confirmed to be true and accurate by each party.

2. Amendments. The Lease is hereby amended and modified to include the following provisions:

a. 1/8 Royalty Rate. The Lessee shall pay monthly to Lessor a royalty of one eighth (1/8th) of the net proceeds realized from the sale of all oil produced and sold from wells that are drilled on the leased premises after the date of this Amendment on the premises, after deducting charges for making it merchantable and transporting the oil to the point of sale, and shall pay monthly to Lessor for all gas produced and sold from wells drilled on the leased premises after the date of this Amendment, a royalty equal to one-eighth (1/8th) of the Amount Realized (as defined below) by Lessee from the first sale of such gas. The Lessor will be paid a royalty based on the volumes of oil and gas sold by Lessee and shall not be entitled to royalty payments for any volumes not sold, regardless if produced or measured at any point other than the point of sale. The "Amount Realized" is the amount received by Lessee at the first point of sale from the sale of gas minus any and all reasonable and actual post production costs and expenses incurred by Lessee and/or its affiliates between the wellhead and the point of sale, including, but not limited to, costs associated with the following: gathering and/or transporting the gas from the well to the point of sale (including line loss); and compressing (including the cost of electricity, gas or other fuel); and desulphurization and purification; and treating; and dehydrating; and extracting; and processing; and storage; and marketing; and sweetening; and removal of liquid or gaseous substances or impurities from the gas. Such expenses and costs shall include all severance, ad valorem, and other production related taxes charged to or incurred by Lessee. Lessee shall have the right to allocate post production costs and expenses in its reasonable discretion. This provision shall not change any royalties due from wells drilled on the leased premises, or lands pooled or unitized therewith, prior to the date of this Amendment. If the Lessor does not have title to all the oil and gas under the above described premises, Lessor agrees on demand made to refund rental and royalty paid, and release Lessee from the payment of future rental and royalty, in the proportion that the outstanding interest or title bears to the whole tract. If the acreage or area herein recited is in excess of the true quantity of land in said premises, Lessor agrees upon demand made to refund rental paid and to release Lessee from the payment of future rental in the proportion that the excess of recited acreage over the true acreage in the leased premises bears to the recited acreage. If the recited acreage or area be found to be less than the true quantity



1405/621

of land in said premises, Lessee, on demand made, shall pay up the arrears or deficiency in rental payments on the basis of the excess of the true over the said recited acreage and thereafter pay the rental under this Agreement on the basis of the true acreage.

b. Unitization and Pooling. Lessee is hereby given the right at its option, at any time from the date hereof while this agreement shall be in effect and from time to time within such period, to pool all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land to create units of such size and surface acreage as Lessee may desire, but containing not more than 640 acres plus 10% acreage tolerance. If at any time larger units are required under any then applicable law, rule, regulation or order of any governmental authority for the drilling, completion, or operation of a well, any such unit may be established or enlarged to conform to the size specified. Each unit may be created by governmental authority or by a written declaration-notice executed by Lessee and delivered to Lessor containing a description of the unit so created, specifying the mineral stratum or horizon so pooled, if so limited. Any well which is commenced, or is drilled or is producing on any part of any lands theretofore or thereafter so pooled shall, except for the payment of royalties, be considered a well commenced, drilled, and producing on the lands hereby leased. There shall be allocated to the portion of the leased premises included in any pooling such proportion of the actual production from all lands so pooled as such portion of the leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production from the portion of the leased premises included in such pooling in the same manner as though produced from such portion under the terms of this Agreement. Each of said options may be exercised by Lessee from time to time, and a unit may be formed either before or after a well has been drilled or production has been established on the leased premises or on a portion of the leased premises which is included in the pool or on other lands which are pooled therewith. Lessor waives any rights to notice, hearing and objection concerning the pooling or unitization of the leased premises under federal, state and local laws, statutes and regulations

c. Shut-In. When all wells, except gas storage or disposal wells, on said land are shut in by Lessee for a continuous period of thirty (30) days or longer after the expiration of the primary term, the Lessee shall pay to the Lessor a shut-in royalty in the amount of $5.00 per net acre annually, prorated on a monthly basis, payable monthly, quarterly, annually, or at the end of such shut in period.

d. Expiration, Termination, Abandonment, Etc. This Lease shall not be presumed abandoned, forfeited, terminated, expired, or otherwise lost unless a release of the same is executed and recorded by Lessee; this provision shall not override or supersede any provisions of this Lease with respect to the term hereof.

3. Ratification of Remaining Lease Provisions. Lessor and Lessee hereby (i) ratify and agree that the Lease is valid and in effect, (ii) agree that Lessee is not in violation of any terms or provisions of the Lease, including any royalty or rental payment terms thereof, (iii) ratify and affirm all of the terms and provisions of the Lease to the extent that they are not changed, altered or amended by this Amendment.

4. Instrument Is Binding. The provisions hereof shall be binding upon the parties, their heirs, legatees, devisees, personal representatives, successors, and assigns.

5. Counterparts. This Amendment may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Amendment and all of which will be deemed to comprise one single instrument.

BK 1405 PG 623

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date first set forth above.

**LESSOR:**

William J. Fox

______________________

**LESSEE:**

EQT Production Company

By: Rex C. Ray

Its: Attorney-In-Fact

STATE OF WEST VIRGINIA
COUNTY OF Monongalia:

Before me, Anthony R. Cochran, a Notary Public, on this day, personally appeared William J. Fox, widower, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed said Instrument.

Given under my hand and seal of office this 14th day of January, 2010.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
ANTHONY R. COCHRAN
[illegible] HOLLOW
KENNA, WV 25248
My commission expires February 3, 2016

My Commission expires Feb. 3, 2016

Notary Public

STATE OF WEST VIRGINIA :
COUNTY OF KANAWHA :

Before me, Cathy Ewald, a Notary Public, on this day personally appeared Rex C. Ray, known to me to be the person whose name is subscribed to the foregoing instrument, and known to be the Attorney in Fact of EQT Production Company, a Pennsylvania corporation, and acknowledged to me that he executed said instrument for the purposes therein expressed as the act of said company. Given under my hand and seal of office this 28 day of January, 2010.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
CATHY EWALD
2308 WOLFPEN ROAD
CULLODEN, WV 25510
My Commission Expires SEPT. 20, 2010

Notary Public

My Commission expires 9-20-10

Prepared in blank form by Benjamin M. Sullivan, Senior Attorney, EQT Production Company, 1710 Pennsylvania Avenue, Charleston, WV 25302

Revision Date: July 30, 2009